

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00244-CR

**RODERICK DESHUN CRENSHAW,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 85th District Court**
**Brazos County, Texas**
**Trial Court No. 10-00182-CRF-85**

## MEMORANDUM OPINION

A jury found Appellant Roderick Crenshaw guilty of possession of a controlled substance, namely, cocaine, in an amount of one gram or more but less than four grams, and the trial court assessed his punishment at ten years' confinement. This appeal ensued. We will affirm.

Officer Crystal O'Rear of the Bryan Police Department testified that on October 25, 2009, at about 3:10 a.m., she observed a vehicle with its doors open on the side of the street in front of a house. O'Rear stopped her patrol car behind the vehicle, and as she

got out, she saw someone kneeling into the driver's side area of the car. O'Rear initially thought it might be a car burglary.

O'Rear walked to the driver's side of the vehicle where she could see a man kneeling. She also observed someone in the passenger seat of the car. O'Rear said, "Hey, what's going on," and the man who was kneeling got out of the car and started acting "fidgety," meaning that he was walking around, putting his hands into his pockets, and avoiding eye contact. This concerned her because, in the past, those acting "fidgety" have either taken off running or tried to hide something. The man who had been kneeling identified himself as Crenshaw, and the man in the passenger seat of the car identified himself as Wesley Moore. Crenshaw said that the car belonged to his aunt and that they were working on the vehicle. In O'Rear's opinion, there was not enough light for them to be working on the vehicle.

O'Rear was by herself, without backup, so she attempted to take control of the situation by asking both men to sit on the ground near one another. O'Rear noticed that when Crenshaw went toward the yard, he made a quick backward pitching motion with his arm, and she heard a thud. O'Rear immediately thought that something had been thrown, and she described the thud as a metallic clank-type sound. O'Rear also said that, out of the corner of her eye, she had seen a blue-colored object fall to the ground when Crenshaw made the pitching motion. She never saw Moore do anything that appeared to be a tossing motion or anything that would lead her to believe that he discarded anything in her presence.

At that point, O'Rear called for a second unit to come and assist her. Crenshaw sat down but continued to act fidgety. He mentioned several times that he wanted to go in the house and use the restroom, but O'Rear refused to allow him to do that for safety reasons. Officer Jeremy Elmore then arrived to assist O'Rear, and Crenshaw was taken into custody and put in the back of the patrol car.

The in-car video of the encounter was admitted into evidence, but O'Rear explained that she did not start the recording until after she saw the object being thrown. The video only shows everything that transpired after that.

Henry Amen, a forensic scientist for the Texas Department of Public Safety crime lab in Austin, testified that the crack rocks found by O'Rear after Crenshaw was in custody contained cocaine and weighed 1.13 grams.

In his first issue, Crenshaw contends that the evidence is "legally insufficient" to support his conviction. Specifically, Crenshaw argues that the evidence failed to "affirmatively link" him with the cocaine.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the

cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), *cert. denied*, 132 S.Ct. 2712 (2012).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. 307 at 326. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The State was required to prove beyond a reasonable doubt that the accused intentionally or knowingly possessed cocaine in an amount of one gram or more but less than four grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (c) (West 2010). To do so, the State had to establish: (1) the accused exercised control, management, or care over the substance, and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Whether the evidence is direct or circumstantial, "it must establish, to the requisite level

of confidence, that the accused's connection with the drug was more than just fortuitous. . . ." *Id.* at 405-06 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). Previously, this was referred to as the "affirmative links" rule. *See id.* at 406. However, the Court of Criminal Appeals has cautioned against use of the term "affirmative links" as suggesting "an independent test of legal sufficiency" and has chosen instead to use only the term "'link' so that it is clear that evidence of drug possession is judged by the same standard as all other evidence." *Evans v. State*, 202 S.W.3d 158, 162 n.9 (Tex. Crim. App. 2006).

The rule is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. *Poindexter*, 153 S.W.3d at 406. The rule simply restates the commonsense notion that a person, such as a father, son, spouse, roommate, or friend, may jointly possess property like a house but not necessarily jointly possess the contraband found in that house. *Id.* Thus, "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Id.* (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)).

Some circumstances that may link a defendant to the controlled substance are: (1) the defendant's presence when the search was executed; (2) the contraband was in plain view; (3) the proximity to and accessibility of the contraband; (4) the defendant was under the influence of contraband; (5) the defendant's possession of other

contraband when arrested; (6) incriminating statements by the defendant when arrested; (7) attempted flight by the defendant; (8) furtive gestures by the defendant; (9) there was an odor of the contraband; (10) the presence of other contraband or drug paraphernalia not included in the charge; (11) the defendant's ownership or right of possession of the place where the controlled substance was found; (12) the drugs were found in an enclosed place; (13) there was a significant amount of drugs; and (14) the defendant possessed weapons or large amounts of cash. *Stubblefield v. State*, 79 S.W.3d 171, 174 (Tex. App.—Texarkana 2002, pet. ref'd); *see also Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex. App.—Corpus Christi 2002, no pet.); *De La Garza v. State*, 898 S.W.2d 376, 379 (Tex. App.—San Antonio 1995, no pet.). The number of links present is not as important as the degree to which they tend to link the defendant to the controlled substance. *Stubblefield*, 79 S.W.3d at 174; *Williams v. State*, 906 S.W.2d 58, 65 (Tex. App.—Tyler 1995, pet. ref'd).

In Crenshaw's argument, he notes the absence of several of the above circumstances, which then leads him to the conclusion that the evidence failed to link him with the cocaine. For example, Crenshaw states that the area was *not* in his exclusive possession or control; he did *not* attempt to flee the scene or evade arrest; he did *not* try to give a false name or date of birth; the contraband was *not* in plain view; *no* tests were done to verify that he had handled the "mysterious blue box"; he did *not* make any incriminating statements when he was arrested; he did *not* live at the location and it was *not* an enclosed space; he was *not* found with a large amount of cash; and he

did *not* indicate a consciousness of guilt. But the absence of some of the circumstances is not evidence of innocence that must be weighed against the circumstances that are present. *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976). The issue is whether there is sufficient evidence linking Crenshaw to the cocaine to support the reasonable inference that he was intentionally and knowingly in possession of the cocaine. *See id.*

Here, O'Rear testified that when she first approached Crenshaw and the car, Crenshaw started acting "fidgety." When Crenshaw went toward the yard, he then made a quick backward pitching motion with his arm. O'Rear heard a thud and immediately thought that something had been thrown. O'Rear also saw a blue-colored object fall to the ground. O'Rear never saw Moore do anything that would lead her to believe that he discarded anything in her presence.

Once Crenshaw was in custody, O'Rear immediately went and looked to see what Crenshaw had thrown. She found a white box with an open blue lid and what she believed to be three crack rocks beside the box. The blue color of the lid was consistent with the blue color that she had seen out of the corner of her eye earlier. She also found two more crack rocks in the street by the curb, not far from the other three crack rocks, and a crack pipe in the grass. O'Rear stated that the white box was capable of containing the crack rocks that she found, and where she found the crack rocks was consistent with the rocks having come out of the box after it had fallen to the ground. No actual analysis was done of the white box and blue lid to determine whether it had held crack cocaine. When asked what led her to believe that the container and the crack

rocks had not been sitting there all night, O'Rear replied that the grass was very dewy that morning, yet the box and the crack rocks were dry and clean.

O'Rear also testified she believed Crenshaw may have been intoxicated because his eyes were "squinty" and he had a dazed appearance. O'Rear admitted that Crenshaw could have just been tired at that hour of the morning; however, she noted that being in handcuffs is not comfortable, yet Crenshaw was "able to practically fall asleep in the backseat of the patrol car." Furthermore, on the in-car video, Crenshaw said "lock me up" while O'Rear was searching and finding crack rocks.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational fact finder could have found beyond a reasonable doubt that Crenshaw intentionally and knowingly possessed cocaine in an amount one gram or more but less than four grams.[1] The evidence is thus sufficient to support Crenshaw's conviction, and we overrule his first issue.

In his second issue, Crenshaw contends that the evidence is factually insufficient to support his conviction. The Court of Criminal Appeals has overruled *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), and factual-sufficiency review. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.); *see also Lucio*, 351 S.W.3d at 895; *Griego v. State*, 337 S.W.3d 902, 903 (Tex. Crim. App. 2011). The court

---

[1] Crenshaw argues otherwise by stating that *Evans v. State*, 185 S.W.3d 30 (Tex. App.—San Antonio 2005), *rev'd*, 202 S.W.3d 158 (Tex. Crim. App. 2006), is instructive. *Id.* at 37 (holding that court did not know whether appellant was "innocent bystander" when evidence failed to link appellant to cocaine other than by his presence and its proximity). But the Court of Criminal Appeals reversed the court of appeals decision in *Evans*, concluding that "the circumstantial evidence, when viewed in combination and its sum total, constituted amply sufficient evidence connecting appellant to the actual care, custody, control or management of the cocaine in front of him." *Evans v. State*, 202 S.W.3d 158, 166 (Tex. Crim. App. 2006).

held that the *Jackson v. Virginia* legal-sufficiency standard is the only standard a reviewing court should apply in determining the sufficiency of the evidence. *Brooks*, 323 S.W.3d at 895. We just concluded in Crenshaw's first issue that the evidence is sufficient under the *Jackson v. Virginia* standard; thus, we overrule Crenshaw's second issue.

Having overruled both of Crenshaw's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed October 25, 2012
Do not publish
[CR25]